IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
ELDORADO DIVISION

JAMES E. SMITH                                                    PLAINTIFF

v.                              Civil No. 1:20-cv-01021

RICKY ROBERTS, Sheriff Union County;
NURSE KASEY; CAPTAIN PHILLIPS; CAPTAIN
MITCHAM; SERGEANT COTTON; SERGEANT
JOHNSON; SERGEANT PENDLETON; and
NURSE RICE                                                       DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro se* by Plaintiff, James E. Smith, under 42 U.S.C. §

1983.  Before the Court is a Motion for Summary Judgment and Supplement filed by Defendants.

(ECF Nos. 21, 29).  Plaintiff has responded. (ECF Nos. 26, 34).  Pursuant to the provisions of 28

U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District

Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Division of Correction ("ADC") – Pine

Bluff Unit.  His claims in this action arise from alleged incidents that occurred while he was

incarcerated in the Union County Detention Center ("UCDC") between August 20 and September

13, 2019, and January 1 through January 3, 2020.

Plaintiff was arrested and booked into the UCDC on August 11, 2019.  (ECF No. 23-2, p.

1).  Upon intake, Plaintiff was taking the following medications: Sertaline, Rantidine, Asa,

Nitroglycerin, Clopidogrel, Atorvastatin, and Trilemeg.  *Id.* at p. 2.

On August 22, 2019, Plaintiff submitted a grievance stating, "indigent kit".  (ECF No. 31-

1

3, p. 1).  Stephen Love[1] responded, "You have to order those on kiosk."  *Id.*

On September 1, 2019, Plaintiff submitted a grievance stating, "im in medical in the nurse both have told them they can put me in the room with phone bb."  (ECF No. 31-3, p. 1).  Billy Perry[2] responded, "there is someone in N-2 can not put you in there."  *Id.*

On September 2, 2019, at 10:31:18 a.m., Sgt. Cotton can be seen on body camera footage transporting the pill cart outside of Plaintiff's cell door.  (ECF No. 23-6).  At 10:31:48, Sgt. Cotton can be seen shaking and analyzing a package of pills.  At 10:32:27, Sgt. Cotton holds up a piece of paper which had Plaintiff's name on it.  A few seconds later, Sgt. Cotton holds up another piece of paper which also had Plaintiff's name on it.  At 10:32:41, Sgt. Cotton asks, "why are there two separate medications on here for him?"  *Id.*

At 10:33:29, Sgt. Cotton goes to Plaintiff's cell door and calls out, "Mr. Smith."  At 10:34:14, Sgt. Cotton opens the door to Plaintiff's cell and asks him whether both containers of pills are for him.  (ECF No. 23-6).  Sgt. Cotton asks why there are two sets of pills for Plaintiff both marked with instructions to be taken in the morning.  At 10:34:44, Sgt. Cotton asks Plaintiff whether he usually takes one of the pill packages or two.  In response, Plaintiff states he only takes one package in the morning.  At approximately 10:35:20, Sgt. Cotton empties the contents of the package into his hands and asks Plaintiff which pill he is supposed to take.  At 10:36:07, Plaintiff asks how many pills were in the first package.  Sgt. Cotton states that there are six pills in total, and Plaintiff clearly states that the red pill should be included with the other six.  *Id.*

At 10:36:40, Plaintiff states the pills he has been given are the pills he is supposed to take in the morning.  (ECF No. 23-6).  At 10:36:54, Plaintiff states he was not sure about one of the

---

[1] Love is not a named Defendant in the lawsuit.
[2] Perry is not a named Defendant in the lawsuit.

pills.  Seconds later, Sgt. Cotton takes the pill from Plaintiff and states, "I'll take it back so you don't end up taking something you're not supposed to be taking."  At 10:37:22, Sgt. Cotton can be seen using his phone to look up the pill in question.  *Id.*

At 10:38:46, Sgt. Cotton finds the pill in question on drugs.com and tells Plaintiff, "it's a steroid, its Prednisone."  (ECF No. 23-6).  Plaintiff states, "I don't know anything about that," and Sgt. Cotton then replies, "I don't see anything in here where you take the steroids."  Sgt. Cotton stated, "that's a steroid," to which Plaintiff states: "I can't take steroids no more."  At 10:39:45, Sgt. Cotton states he is going to look up to see what the rest of the pills are.  Plaintiff states that the rest of the pills are his.  At 10:42:51, Sgt. Cotton closes Plaintiff's cell door.  Plaintiff was not given the Prednisone pill.  *Id.*

> On September 3, 2019, Nurse Kasie Sanford noted:
>
> Nurse was contacted by Day Sgt. 9-2-19 regarding an additional medication pouch with inmates name that included only one tablet of Prednisone.  Nurse told Day Sgt. Inmate does not take that medication, therefore inmate was not given the tablet.  Inmate was given medications as directed on the MAR.  Inmate has shown so S/S of any additional issues, nor has C/O any additional issues.
>
> Spoke with inmate AM med pass regarding possible medication error on 9-2-19 by Day Sgt. Inmate claimed he was (and has been) getting Prednisone, which is not one of his prescribed medications.  Inmate states he hasn't been feeling well and that would be why he doesn't.  He stated he is not supposed to take Prednisone.  Nurse explained to Inmate he has not been receiving Prednisone with his medications.  The medication packaging error on 9-2-2019 was an isolated incident that was caught before Inmate was given the additional medications.  Day Sgt. had body cam video to prove inmate did not receive the additional medication.  Nurse verified inmate has not been given any medications not prescribed to him, to date.  Inmate expressed understanding and did not have any further C/O.  Nurse explained to inmate if he isn't feeling well he needs to let Nurse/Officer know.  Inmate expressed understanding.

(ECF No. 23-5, p. 1).

On September 4, 2019, Plaintiff submitted a grievance, stating: "Sgt. Coton past my meds

inask me if them was mine in I said yes in gave him the one back in it was someone else storid was in it he looked it up n the phone that was not not the first time I seen that pill I got sick almost had a stroke and kidney was hurting me nee to talk to Mr. Robert about this law suit." (ECF No. 23-3, p. 1).

On September 4, 2019, Plaintiff also submitted a medical request stating: "need u to get medical record, see nurse also, need dr. dodd and ahec record. My teeth filling out and its got my jaw bone hurting and these blood clots r hurting bad in my legs and private area. Then my nerves in my back and legs hurt bad hard to lay on my matt have sleep sitting up." (ECF No. 31-4). UCDC medical personnel responded stating, "you will see the provider on Monday." *Id.*

On September 4, 2019, Plaintiff submitted a grievance stating, "Need to talk to Mr. Robert." (ECF No. 31-3, p. 2). Billy Perry responded stating, "we will pass the word along." *Id.*

On September 4, 2019, Plaintiff also submitted a grievance stating, "my phone pin dont work." (ECF No. 31-3, p. 2). Billy Perry responded stating, "rewrite using form grievance-booking." *Id.*

On September 6, 2019, at 8:31:03, an MCDC officer can be seen opening the door to Plaintiff's cell. Chief Deputy Phillips then speaks with Plaintiff and states he has come to talk to Plaintiff about his grievance. At 8:31:24, Chief Deputy Phillips states, "we got it on video you got the right medicine, you didn't get the wrong medicine." At 8:32:01, Plaintiff states he gave the pill back he wasn't supposed to get. At 8:32:05, Chief Deputy Phillips states Plaintiff needs to put in a doctor call to make sure he doesn't get sick anymore. At 8:32:23, Chief Deputy Phillips can be seen leaving Plaintiff's cell. (ECF No. 23-6).

That same day, Nurse Kasie Sanford noted:

Inmate spoke with Unit 2 regarding grievance placed about receiving medication

4

not prescribed to him.  Unit 2 spoke with Nurse, prior to speaking with Inmate, and verified Inmate has not been receiving additional meds that are not for him.  Nurse explained the isolated incident of medication packaging error on 9-2-2019.  Unit 2 explained to Inmate he had reviewed body cam video and verified Inmate has not been given any additional medications that are not his.  Inmate expressed understanding.

(ECF No 23-5, p. 2)

On September 7, 2019, Plaintiff submitted a grievance, stating:

I need to talk to talk to captrobert about getting the law to arrest Courtney mathis and gussiemathis for using my debt cardvand refusing to giveemtricesmith my clothes, funturee and debt cardand more also gussie mathis hit me in theback of my head with my can Courtney address is 1305lot 7 bock street phone 6656650she work at sonic please helpme my brother name is demtrice smith 3107755courtney can be hinding insmackover at gussie mthis ith her new man but se I gave er hiv but don't have it and I dint tellher but I did ten she said I hit her but she tried to hit me in I tried to block her.

(ECF No. 31-3, p. 3).

On September 7, 2019, Plaintiff also submitted a grievance stating, "I need aform to put a charge on Courtney mathis ndvher mother gusse mathis they using myebt card and wontgive my brother my future or my clothes."  (ECF No. 31-3, p. 2-3).  Defendant Pendleton responded stating, "You already wrote this."  *Id.*

On September 8, 2019, Plaintiff placed a phone call.  (ECF No. 31-6).

On September 9, 2019, Plaintiff was seen and evaluated by Dr. Hopson at the UCDC for "groin PX RT ET C.O 'my teeth are up in my sinus'".  (ECF No. 26, p. 10).  The Doctor noted, "frail w/several serious medical issues concerned he may have aids.  Needs medical evaluation more extensively".  *Id.*  Dr. Hopson prescribed ten (10) days of antibiotics for Plaintiff which were given to him during the remainder of his incarceration at the UCDC until he was released to the ADC.

On September 10, 2019, Plaintiff placed another phone call.  (ECF No. 31-6).

On September 10, 2019, Plaintiff submitted a grievance stating,

> I need yall to send someone to 1305 bock lot 7 to tell Courtney mathis to give yall my debt card she been using it and wont give it to my bother it or my funrute, clothes, shoes and applanices out of the house it been a month now if she don't give them to him then I want charges file on her her number 6656650 and my brother demtrice 310775.  Also need to talk to police asap for I go to adc.

(ECF No. 31-3, p. 3).  Lisa Worley[3] responded stating, "contacted EDPD and you family can contact them and they will send an officer with them to try and get you property."  *Id.*

On September 12, 2019, Plaintiff submitted a grievance stating: "the nurse gave me that pill again in now im scare for my life in here this is the second time."  (ECF No. 31-3, p. 4).

During his incarceration at the UCDC in 2019, the UCDC kept a detailed record of all the medication given to Plaintiff.  (ECF No. 23-4, pp. 1-4).  The medication log confirms Plaintiff was only given the medications he was prescribed.  *Id.*

On September 13, 2019, Plaintiff was released to the ADC.  (ECF No. 23-2, p. 1).

Although the record is not clear, it appears Plaintiff was again booked into the UCDC at some point after he was sent to the ADC.  On January 1, 2020, Plaintiff submitted a grievance stating, "i put on intercom 10 time ast night n all day in know one answer it in nursing station some could die cause tey dont work".  (ECF No. 31-3, p. 5).  Defendant Pendleton responded, "we do rounds all night to check on you".  *Id.*

On January 1, 2020, Plaintiff submitted another grievance stating, "cotton couldnt find my meds I hve to have my meds everyday".  (ECF No. 31-3, p. 5).  Defendant Pendleton respond that same day, "will look into it".  *Id.*

On January 1, 2020, Plaintiff also submitted a grievance stating, "didn't get out for visits".

---

[3] Worley is not a named defendant in the lawsuit.

(ECF No. 31-3, p. 5).  Two days later, Lisa Worley noted, "[Plaintiff] went back to ADC".  *Id.*

According to the affidavit of Defendant Mitcham, the Jail Administrator for the UCDC, the intercom in Plaintiff's cell was connected to the UCDC's max tower, and Plaintiff's cell was on 24-hour camera surveillance in Booking and the max tower.  (ECF No. 31-1, p. 1).  Defendant Mitcham states at times, Plaintiff pressed the intercom button repeatedly, after which deputies would view Plaintiff in his cell, and see that Plaintiff was not in distress, and then reset the intercom.  *Id.*  Defendant Mitcham also states cell checks were conducted hourly for medical cells, where Plaintiff was housed during his August 11, 2019 through September 13, 2019 incarceration. *Id.*

According to Mitcham's affidavit, any inmate housed in a lockdown cell, including medical cells, was offered a shower daily, and an hour out for recreation unless circumstances prohibited it.  (ECF No. 31-1, pp. 1-2).  In addition, Mitcham states the UCDC owns a tablet "that works the same as the kiosk to submit grievances or medical requests.  The tablet is kept in the medical station and is given to inmates upon request.  Plaintiff had access to the tablet in addition to the kiosk to submit grievances or medical requests."  *Id.* at p. 2.

## II. POLICIES OF THE UCDC

It is the policy of the UCDC that the nurse assigned to the jail shall be under the direct supervision of the jail administrator.  (ECF No. 23-7, p. 1).  This policy also provides that the nurse shall provide nursing care to inmate patients and promote and/or improve the overall health utilizing the nursing process in triage.  (ECF No. 23-7, p. 1).  It is the policy of the UCDC that the nurse shall communicate with prisoners about health issues.  *Id.*

The UCDC's policy states it is mandatory for sick call request forms to be filled out completely by an inmate prior to seeing a doctor or nurse.  The policy specifically states that

7

grievances cannot be used as a substitute for sick call request forms.  (ECF No. 23-7, p. 2).

The UCDC also has an established grievance procedure.  (ECF No. 31-5).  The purpose of this policy is to establish a grievance procedure through which inmates may seek formal review of a complaint which relates to any aspect of his detention if less formal procedures have not resolved the matter. All inmates housed in the UCDC may request a grievance arising from policies, conditions, or events within the jail.  All inmates, regardless of their impairment, or handicap, shall be entitled to invoke this grievance procedure.  Through the grievance procedure, inmates in the UCDC shall receive reasonable responses and where appropriate, meaningful remedies. *Id.*

UCDC policy also provides that each shift supervisor should conduct at least one "head count" of inmates during the shift.  There should be a physical account of each inmate incarcerated in the UCDC and it should be documented.  This will be accomplished during Shift Change.  Head count will be mandatory and conducted by the off-going supervisor and the on-coming supervisor. (ECF No. 31-5, p. 2).

UCDC detainees housed in lockdown pods will be required to stay in cells 23 hours per day excluding the 1-hour per day recreation time.  This lockdown procedure is required for all detainees housed in lockdown regardless of reason (disciplinary, protection, investigation).  (ECF No. 31, p. 5).

### III. PROCEDURAL BACKGROUND

Plaintiff filed his verified Complaint on May 13, 2020, against Defendants Ricky Roberts – the Sheriff of Union County, Kasie Sanford[4] and Nurse Rice – Nurses at the UCDC, and Captain Phillips, Captain Mitcham, Sergeant Cotton, Sergeant Johnson, and Sergeant Pendleton – officers

---

[4] Defendant Kasie Sandford is listed in the case caption as "Nurse Kasey".

at the UCDC.  (ECF No. 1).  He is suing Defendants in both their personal and official capacities and is seeking compensatory and punitive damages.  *Id.* at p. 7.

Plaintiff describes Claim One as "medical care They allow Nurse Kasey to give me someone else med (steroid)."  (ECF No. 1, p. 4).  He alleges between August 20 and September 11, 2019, Defendant Roberts "…refuse to answer my request to talk to him about Nurse Kasey giving me someone else meds on a few pill call I received from her and St. Cotton, Sgt. Johnson and Pendleton should not be given out meds they are jailer." *Id.*  For his official capacity claim he states, "refuse me medical help from their Doctor!" *Id.* at p. 11.

Plaintiff describes Claim Two as "denial medical care and wrongly giving me someone else med."  (ECF No. 1, p. 5).  He identifies Defendants Nurse Kasey and Sgt. Cotton as the individuals involved and states, "got sick, blood pressure problem, stop eaten got down to 138 pound, stomach pain and kidney problem headaches." *Id.*  For his official capacity claim he states, "suppose to give me my meds not someone else, medications and Sgt. Cotton, Sgt. Johnson and Sgt. Pendleton not have no medical license to give people meds." *Id.* at p. 6.

Plaintiff describes Claim Three as "medical help".  (ECF No. 1, p. 6).  He identifies Defendant Phillips and Mitcham as the Defendants involved and states, "They work for them at Criminal Justice Facility". *Id.*  For his official capacity claim Plaintiff states, "Did nothing to solve the problem." *Id.*

On page 9 of the Complaint, Plaintiff provides a narrative further explaining his denial of medical care claims and alleging additional conditions of confinement claims as follows:

> On about August 16024 I was seen by the Doctor in was put on meds with my own meds.  Then between 16 of Aug. to Sept 11 of 2019 Nurse Kasey and Sgt. Cotton would give me my meds plus an extra steroid pill that was not mine that made me sick, pain in stomach and loss of weight.  Sgt Cotton and Nurse Kasie blame Nurse Rice package them up wrong on three times.  I complain to them.  The one day

9

Cotton was passing them out by himself it had still an green steroid pill in it that he looked it up on his phone! I told Nurse Kasie, Nurse Rice, Sgt. Johnson, Sgt. Cotton Sgt Pendleton that I feel bad and was in pain but no one did anything for me but told me I had to wait 2 weeks to see the Doctor but did not see the Doctor cause I had court and the Doctor left without seeing me. I wrote grievance on the matter also to Sgt. Pendleton also to talk to Sheriff Ricky Robert but still nothing until Sgt. Cotton and Capt. Phillips came in said I haven't took anyone else med they had it on camera and I need to leave it along. Then Capt. Mitcham came only to talk about me telling me I smell like shit and I needed to exercise and get out of bed, but I could get out of rack cause of the pain in stomach and headaches. Officer came by hearing me moaning and couldn't eat for days. I would push the intercome but no one would answer it. A lot of day they would not let me get out for an hour to use phone or get on Kiosk to write grievances on them Sgt. Johnson, Nurse Rice, Sgt. Cotton and Nurse Kasie would be in office talking but when you call them they would get quiet and don't answer you. Sheriff Ricky Roberts never checks on the problem in his jail. I fear for my life there.

Nurse Kasey and Sgt. Cotton kept putting it on Nurse Rice package it up when she was not at work! I told Nurse Rice at ADC when went to her Unit.

(ECF No. 1, p. 9).

On February 25, 2021, Defendants filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) there is no proof of any personal involvement by Defendants Roberts or Mitcham; 2) Defendants were not deliberately indifferent to Plaintiff's serious medical needs; 3) Defendants are entitled to qualified immunity; and 4) there is no unconstitutional policy implemented by Defendants that violated Plaintiff's rights, and therefore no basis for official capacity/county liability. (ECF No. 21).

On March 22, 2021, Plaintiff filed a Response in opposition to Defendants' motion. (ECF No. 26). However, he does not directly respond to Defendants' Statement of Facts or their arguments. Instead, he submitted numerous documents including the Union County Sheriff's Detainee Policy #3 regarding medical procedures, copies of his medical requests and grievances submitted at the UCDC, his medical records, Inmate Chart Notes for Plaintiff dated September 9, 2019 when he was evaluated by a Dr. Hopson, Inmate Chart Notes for Plaintiff dated September

3 and 6, 2019 made by Defendant Kasie Sanford, records of medications given to him at the UCDC, the Union County Sheriff's Detainee Policy #6 regarding the UCDC's grievance procedure, and an SAMA page dated August 19, 2019.[5]  (ECF No. 26, pp. 1-40).

In response to this Court's order, (ECF No. 27), on April 16, 2021, Defendants filed a Supplement to their Motion for Summary Judgment, Brief in Support, and Statement of Facts to address Plaintiff's conditions of confinement claims relating to Defendants' alleged failure to answer his intercom calls and alleged failure to let him out of his cell for an hour to use the phone or write grievances.  (ECF Nos. 29-31).  Defendants argue Plaintiff failed to exhaust his administrative remedies, he was not subjected to unconstitutional conditions of confinement, Defendants are entitled to qualified immunity, and there is no basis for official capacity liability on the conditions of confinement claims.  *Id.*

On May 17, 2021, Plaintiff filed a Response to Defendants' Supplement to the summary judgment motion.  (ECF No. 34).  He argues Defendants failed to produce various video and audio from the UCDC and "all of these records will prove the Plaintiff's case…"  *Id.* at p. 1.  He also states, "The grievance procedures was done on the kiosk and when Plaintiff was allowed out for an hour plaintiff had to share kiosk and phone with others in the Nursing Station/holding cell…Grievances was hard to get too!"  *Id.* at p. 3.  Plaintiff also disputes there was a tablet to use.  *Id.*

---

[5] Other documents attached to Plaintiff's response include: a signed medical release, a letter from Defendant Roberts to defense counsel, the Court's Initial Scheduling order, a 1983 complaint form listing the instant case number and the Defendants with a description of claims which is not signed or dated, an *in forma pauperis* application which is not signed or dated, a memorandum from Karen Lawson – the law library supervisor with the ADC – to the records office dated March 4, 2021, a Motion to Compel and/or Expedite Ruling which is not signed, and document entitled "Summary to Judge Motion" signed by Plaintiff and dated March 4, 2020  addressed to Defendant Roberts in care of defense counsel requesting various documents.  (ECF No. 26). The Court's docket shows no record of any motion to compel filed by Plaintiff.

## IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V.  DISCUSSION

### A.  Denial of Medical Care

Plaintiff alleges Defendants denied him medical care when: 1) medication that was not his was improperly packaged by Defendant Rice with his name on it and he was given the wrong medication by Defendants Sanford and Cotton; 2) his medication was passed out by Defendants

Cotton, Johnson, and Pendleton who are jailers - not medical personnel; 3) Defendant Roberts refused to talk to him about "Nurse Kasey giving me someone else meds", Defendants Phillips and Mitcham "work for them at Criminal Justice Facility" and did nothing to solve the problem; and 4) he complained to Defendants Sanford, Rice, Johnson, Cotton and Pendleton that he was feeling bad and was in pain but no one did anything except tell him he had to wait two weeks to see the doctor.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512

F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006).

As an initial matter, the summary judgment evidence reveals Plaintiff was diagnosed by Dr. Hopson as having several serious medical conditions. However, the Court is not convinced Plaintiff's claims in this lawsuit directly relate to those conditions. His complaint stems from his belief that he was given a medication that was improperly labelled for him. Even so, for purposes of this Report and Recommendation the Court will assume Plaintiff suffers from serious medical needs.

**1. Incorrect packaging and delivery to Plaintiff of wrong medication.**

Plaintiff alleges he was denied adequate medical care when Defendants Sanford, Rice and Cotton incorrectly packaged his medication and "wrongly giving me someone else med". (ECF No. 1, p. 4, 5, 9). He alleges this "made him sick, pain in stomach and loss of weight." *Id.* at p. 9. First, the summary judgment record confirms Plaintiff never actually took the wrong medication. The UCDC's medication administration log shows Plaintiff only received his prescribed medications during his incarceration in August and September of 2019. (ECF No. 23-4). In addition, video footage shows Defendant Cotton discovered an extra package with one pill in it which had Plaintiff's name on it and made sure, after conferring with Defendant Sanford, that Plaintiff did not take the medication. (ECF No. 23-6).

This is also confirmed by two incident reports dated September 3 and 6, 2019, in which Defendant Sanford describes her conversation with Plaintiff during which she explained to him there was a packaging error on September 2, 2019 which was discovered, and he did not receive any additional medication not prescribed to him. (ECF No. 23-5, p. 1). The incident report states,

14

"Inmate has not been given any medication not prescribed to him to date. Inmate expressed understand and did not have any further C/O…."  The summary judgment evidence shows the packaging error occurred on one occasion and was simply an accident which, at most, constitutes negligence.  *Id.*  In the second incident report, Defendant Sanford notes Plaintiff also spoke with "Unit 2"[6] who again let Plaintiff know he had not received any medications that were not his. (ECF No. 23-5, p. 2).  Once again, it is noted "Inmate expressed understanding."  *Id.*

Even if the Court assumes Plaintiff was given someone else's medication on one occasion,[7] he still fails to state a constitutional claim.  *See McClain v. Howard*, 2015 WL 6123063 (W.D. Ark. Sept. 21, 2015) (finding that giving an inmate the wrong medication on a single occasion at most supports a finding that the officer was negligent).  In addition, the Eighth Circuit has specifically ruled that the accidental administration of a dose of medication on one occasion does not constitute deliberate indifference to a serious medical need.  *Spann v. Roper*, 453 F.3d 1007 (8th Cir. 2006).  Accordingly, I recommend the claims against Defendants Sanford, Rice, and Cotton for improperly packaging and giving Plaintiff someone else's medication be dismissed.

### 2.  Distribution of Medication by Defendants Cotton, Johnson, and Pendleton

Plaintiff alleges he was denied adequate medical care when Defendants Cotton, Johnson, and Pendleton gave him medication because they were jailers and therefore "not licensed to pass out medication."  (ECF No. 1, pp. 4, 6).  This claim fails as a matter of law.  *See Griggs, v. Livermore,* 2014 WL 979197, at *3 (W.D. Ark. March 13, 2014) ("There is no constitutional requirement that medication be disbursed only by trained medical personnel"); *Booker v. Herman*,

---

[6] It appears "Unit 2" is a reference to Defendant Phillips.
[7] Plaintiff mentions in his Complaint that the mix up in medication occurred "3 times".  However, he does not provide the dates of the alleged mix ups or who was involved.

2006 WL 2457230, at *5 (N.D. Ind. Aug. 22, 2006) ("While it might be a good practice, tradition, or even state law to require that only medical staff can deliver medication, the Constitution does not prohibit guards from distributing medication to inmates.  This allegation states no claim upon which relief can be granted").  Accordingly, I recommend Plaintiff's claims against Defendants Cotton, Johnson, and Pendleton for passing out his medication be dismissed.

### 3.  Defendants Phillips, Mitcham, and Roberts

Plaintiff alleges Defendants Phillips and Mitcham denied him medical care because "They work for them at Criminal Justice Facility".  (ECF No. 1, p. 6).  Plaintiff alleges Defendant Roberts denied him medical care when he refused to speak with him about grievances he filed concerning his medication being improperly packaged and distributed.

First, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which if proven true, would demonstrate the named defendants violated the plaintiff's federal constitutional rights while acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Although federal courts must view pro se pleadings liberally, such pleadings may not be merely conclusory.  The complaint must allege facts, which if true, state a claim as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions").

At the time of the events in question, Defendant Mitcham was the UCDC's Jail Administrator, Defendant Roberts was the Sheriff of Union County, and Defendant Phillips was a Sergeant at the UCDC who spoke to Plaintiff once to reassure him he had not received another inmate's medication.  General responsibility for supervising a detention center or simply being employed at a detention center is insufficient to establish personal involvement.  *Reynolds v.*

*Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

Here, there is no summary judgment evidence Defendants Roberts, Mitcham, or Phillips were involved in providing medical care to Plaintiff. In addition, it is well settled that there is no constitutional right requiring jail officials to answer grievances filed by an inmate. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Accordingly, Plaintiff's dissatisfaction with the UCDC's grievance procedure and Defendant Robert's alleged failure to discuss his grievances with him does not state a constitutional claim. Accordingly, I recommend Plaintiff's claims for denial of medical care against these Defendant Roberts, Mitcham and Phillips be dismissed.

### 4. Response to Medical Complaints

Plaintiff alleges he told Defendants Sanford, Rice, Johnson, Cotton and Pendleton he was "feeling bad and was in pain but no one did anything except tell him he had to wait two weeks to see the doctor". (ECF No. 1, p. 9). This claim is not supported by the summary judgment record.

Plaintiff states in his Complaint "On about Aug 16-24 I was seen by the Doctor in was put on meds with my own meds…" (ECF No. 1, p. 9). The UCDC's medication log reveals Defendants provided Plaintiff with his medications every day as prescribed between the date of his arrival at the UCDC – August 12, 2019 - and the day he was sent to the ADC - September 13, 2019. Plaintiff also states in his Complaint that he missed seeing the doctor on one occasion because he was in court and "the Doctor left without seeing me." (ECF No. 1, p. 9). Then on September 9, 2019 Plaintiff was seen and evaluated by Dr. Hopson. That day Plaintiff was

prescribed antibiotics for his complaints of dental and sinus pain. Dr. Hopson noted Plaintiff had thyroid problems and might have aids. He also noted, "needs medical evaluation more extensively". (ECF No. 26, p. 10). The following day, Defendant Rice completed an ADC Health Services Request to "Fast Track" Plaintiff to the ADC for medical treatment. (ECF No. 26, p. 7). On September 13, 2019, Plaintiff was transported to the ADC.

Defendants Rice and Sanford responded to Plaintiff's complaints and arranged for him to see Dr. Hopson when he was available. Defendants Cotton, Johnson, and Pendleton made sure Plaintiff received his prescribed medications every day during his incarceration at the UCDC. The summary judgment evidence does not support any of these Defendants were deliberately indifferent to Plaintiff's medical needs or kept him from seeing the UCDC's physician. Accordingly, I recommend Plaintiff's claims for inadequate medical care against Defendants Rice, Sanford, Cotton, Johnson, and Pendleton be dismissed.

### B. Conditions of Confinement

Plaintiff alleges "I would push the intercom but no one would answer it…a lot of day they would not let me get out for an hour to sue phone or get on kiosk to write grievances…". (ECF No. 1, p. 9). Defendants argue Plaintiff failed to exhaust his remedies concerning these claims and he was not subjected to unconstitutional conditions of confinement.

### 1. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court

concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

A review of the summary judgment record confirms Plaintiff did file grievances relating to an inoperable intercom and restrictions he encountered when attempting to use the phone. On September 1 and 4, 2019, Plaintiff submitted grievances regarding lack of phone usage. (ECF No. 31-3, pp. 1-2). On January 1, 2020, Plaintiff submitted a grievance stating, "i put on intercom 10 time ast night n all day in know one answer it in nursing station some could die cause tey dont work". (ECF No. 31-3, p. 5). That same day, Plaintiff also submitted a grievance stating, "didn't get out for visits". (ECF No. 31-3, p. 5). Although the language he used in each of these grievances does not mirror the words he used in his Complaint, for purposes of this Report and Recommendation the Court finds the grievances were adequate for exhaustion purposes on these claims.

However, the summary judgment record does not show Plaintiff filed any grievances concerning difficulty accessing the grievance procedure. In addition, Plaintiff has not presented evidence, other than self-serving accusations, any Defendant prevented Plaintiff from utilizing the grievance procedure or failed to comply with the procedure themselves. Even so, the Court will

address this claim on the merits in the next section.

### 2. Inoperable intercom, denial of phone and kiosk usage

"[W]hen the State takes a person into its custody and holds him there against his will, the constitution imposes upon it a corresponding duty to assume some responsibility of his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Claims for unlawful conditions of confinement include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health

or safety." *Revels,* 382 F.3d at 875.  However, courts are not concerned with *de minimis* levels of imposition on inmates.  *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979).

First, Plaintiff's claim regarding an inoperable intercom fails as a matter of law.  In *Lowry v. Sutterfield*, the Court determined the plaintiff had no cause of action regarding the lack of an intercom or call button in his cell, as the Eighth Amendment does not mandate the availability of a functioning intercom in each prisoner's cell.  *Lowry v. Sutterfield,* 2020 WL 2950358, at *2 (W.D. Ark. 2020).  Other courts that have addressed the issue have uniformly found that it does not constitute a violation of the Eighth or Fourteenth Amendments. *See Parsons v. Wilkinson*, 490 F.3d 490 (6th Cir. 1998) (unpublished table decision) (finding the plaintiff failed to demonstrate that the absence of an emergency call button in his cell subjected him to a serious deprivation of life's necessities); *Garner v. City of Philadelphia*, 2013 WL 4401327, at *6 (E.D. Pa. Aug. 16, 2013) (finding that although panic buttons may offer inmates additional safety and protection, the court could not find that panic buttons constitute a minimal civilized measure of life's necessities); *Torres v. Wright*, 2018 WL 1175408, at *4 (D. Conn. Mar. 6, 2018) (finding that prisoners do not have an Eighth Amendment right to a cell equipped with an emergency call button).  Further, the intercom in Plaintiff's cell was connected to the UCDC Max tower and Plaintiff's cell was on twenty-four (24) camera surveillance in Booking, and the Max tower.

The Court also finds no constitutional violation regarding a denial of access to a phone or use of the kiosk to file grievances.  First, Plaintiff has not alleged specific dates when he was not allowed out of his cell to use the phone or write grievances.  Moreover, the summary judgment record confirms Plaintiff made phone calls, filed approximately twelve (12) grievances, and filed several medical requests during his incarceration in the UCDC in 2019 and early 2020.

21

Accordingly, I recommend Defendants be granted summary judgment on Plaintiff's conditions of confinement claims.[8]

### C. Official Capacity Claims

Plaintiff also sues Defendants in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Union County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Union County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Union County that contributed to the alleged violation of Plaintiff's constitutional rights. Thus, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

---

[8] Because the Court finds there has been no violation of Plaintiff's constitutional rights, it is not necessary to address the issue of qualified immunity.

## IV. CONCLUSION

For the reasons stated above, I recommend Defendants' Motion for Summary Judgment and the Supplement (ECF Nos. 21, 31) be **GRANTED** and the claims against all Defendants, be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 25th day of May 2021.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE